**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

_____

| | |
|---|---|
| **DANA CAMERON** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )      **Civil Action No. WGC-12-1239** |
| | ) |
| **CAROLYN W. COLVIN** | ) |
| **Acting Commissioner of Social** | ) |
| **Security** | ) |
| | ) |
| **Defendant.** | ) |
| _____ | ) |

## MEMORANDUM OPINION

Plaintiff Dana Cameron ("Ms. Cameron" or "Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401-433. The parties consented to a referral to a United States Magistrate Judge for all proceedings and final disposition. *See* ECF Nos. 2, 5-6[1] Pending and ready for resolution are Plaintiff's Motion for Summary Judgment, or in the Alternative, Motion for Remand (ECF No. 10) and Defendant's Motion for Summary Judgment (ECF No. 12). No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons set forth below, Defendant's Motion for Summary Judgment will be granted and Plaintiff's Motion for Summary Judgment (or Alternative Motion for Remand) will be denied.

---

[1] The case was subsequently reassigned to the undersigned.

1. **Background**.

On July 25, 2006 Ms. Cameron filed an application for DIB[2] alleging a disability onset date of July 31, 2001 due to multiple sclerosis, chronic fatigue, carpal tunnel, irritable bowel syndrome, numbness and migraines. *See* R. at 83-84, 95. Ms. Cameron's application was denied initially on October 4, 2006. R. at 57-60. On February 22, 2007 the Social Security Administration received Ms. Cameron's request for reconsideration. R. at 61. On April 18, 2007 Ms. Cameron's DIB application was denied again. R. at 62-63. On July 9, 2007 the Social Security Administration received Ms. Cameron's request for a hearing before an Administrative Law Judge ("ALJ"). R. at 64. On October 21, 2008 an ALJ convened a hearing. R. at 22-54. Ms. Cameron was represented by counsel. During the hearing the ALJ obtained testimony from Ms. Cameron. In the December 24, 2008 decision the ALJ found Ms. Cameron was not disabled at any time from July 24, 2006 (her amended alleged onset date of disability) through December 31, 2006 (the date last insured)[3] within the meaning of the Act. R. at 20. Ms. Cameron requested a review of the hearing decision. R. at 7. On February 23, 2012 the Appeals Council denied Ms. Cameron's request for review, R. at 1-6, thus making the ALJ's determination the Commissioner's final decision.

2. **ALJ's Decision**.

The ALJ evaluated Ms. Cameron's claim for DIB using the sequential evaluation process set forth in 20 C.F.R. § 404.1520. Ms. Cameron bears the burden of demonstrating her disability as to the first four steps. At step five the burden shifts to the Commissioner. If Ms. Cameron's

---

[2] Ms. Cameron "has acquired sufficient quarters of coverage to remain insured through December 31, 2006[.]" R. at 13. *See id.* at 89, 91.

[3] "Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits." R. at 13.

claim fails at any step of the process, the ALJ does not advance to the subsequent steps. *Pass v.*

*Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

At step one the ALJ found Ms. Cameron has not engaged in substantial gainful activity

from July 24, 2006[4] through her date last insured of December 31, 2006. R. at 15. The ALJ

concluded at step two that Ms. Cameron had the following severe impairments: "history of

multiple sclerosis (MS), bilateral carpal tunnel syndrome (CTS), sleep apnea and depression[.]"

*Id.* The ALJ further found at step two that Ms. Cameron's C6-7 disc bulge was a non-severe

impairment since this condition had "no more than a minimal effect on her ability to perform

basic work activity and imposes no significant vocationally relevant limitations[.]" *Id.*

At step three the ALJ found Ms. Cameron does not have an impairment or combination

of impairments which meets or medically equals a listed impairment. The ALJ specifically

considered the listings in section 11.00, neurological disorders, and section 12.00, mental

disorders. With regard to neurological disorders, the ALJ considered Listings 11.09[5] and 11.04[6]

and found no objective medical evidence demonstrating Ms. Cameron satisfying the specific

---

[4] At the hearing Ms. Cameron and her counsel amended the alleged onset date to July 24, 2006. *See* R. at 29-30.

[5] *Multiple sclerosis.* With:
  A. Disorganization of motor function as described in 11.04B; or
  B. Visual or mental impairment as described under the criteria in 2.02 [Loss of visual acuity], 2.03 [Contraction of the visual field in the better eye], 2.04 [Loss of visual efficiency], or 12.02 [Organic Mental Disorders]; or
  C. Significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process.

[6] *Central nervous system vascular accident.* With one of the following more than 3 months post-vascular accident:
  A. Sensory or motor aphasia resulting in ineffective speech or communication; or
  B. Significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C) [*Persistent disorganization of motor function* in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral, cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combinations, frequently provides the sole or partial basis for decision in cases of neurological impairment. The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms.]

criteria of these Listings. "[Ms. Cameron] is able to ambulate without the use of assistive device and she is able to perform fine and gross movements effectively[.]" R. at 16 (citation omitted).

With regard to Ms. Cameron's mental impairment, *i.e.,* depression, the ALJ specifically considered Listing 12.04.[7] In accordance with 20 C.F.R. § 404.1520a, the ALJ followed a special technique to evaluate the severity of Ms. Cameron's depression. The four broad functional areas — (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace and (4) episodes of decompensation — are known as the "paragraph B" criteria for most of the mental disorders listed in Appendix 1. The ALJ determined Ms. Cameron has *mild* restriction in activities of daily living. "She is independent in self-care, drives, shops, performs a variety of household chores at her own pace, uses a computer daily, watches television, pays bills and uses a checkbook, does crossword puzzles, and enjoys reading[.]" R. at 16 (citation omitted).

.     With regard to social functioning, the ALJ found Ms. Cameron has *mild* difficulties. "[Ms. Cameron] presents no signs of social isolation or withdrawal and keeps in touch with friends and family members via E-mails and telephone calls. She is able to maintain and sustain relationships and there is no history of anti-social behavior." *Id.* As for concentration, persistence or pace, the ALJ determined Ms. Cameron has *moderate* difficulties.

> [Ms. Cameron] disclosed in Function Report dated August 31, 2006, that she is capable of managing her finances and handling a checkbook; she further disclosed that she enjoys reading, doing crossword puzzles, crocheting, and uses a computer daily. All of these activities require sustained levels of concentration. Nonetheless, she is being given the benefit of the doubt based on records provided by a treating neurologist, Dr. Natalie Getzoff, who disclosed on December 29, 2006, that [Ms. Cameron] is

---

[7] *Affective Disorders:* Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.

> "severely depressed" and prescribes her Effexor for depression
> (Exhibit[s] 9F and 2E). [Ms. Cameron] testified that she did not
> start to see a psychologist until 2007 and there is no evidence that
> any of her treating sources deemed it necessary to refer her to a
> mental health specialist during her insured period, on or before
> December 31, 2006.

*Id.* Fourth, the ALJ found Ms. Cameron has not experienced any episodes of decompensation.

Because Ms. Cameron's depression does not cause two "marked" limitations or one "marked"

limitation and "repeated" episodes of decompensation, the "paragraph B" criteria are not

satisfied. The ALJ then proceeded to consider the "paragraph C" criteria.

> [Ms. Cameron] has not experienced repeated episodes of
> decompensation of an extended duration, is not living in a highly
> structured environment and is not so marginally adjusted that even
> a minimal increase in mental demands or change in environment
> would cause her to decompensate (Exhibit 9F). Thus the criteria of
> the listings in section 12.00 are not met.

R. at 17.

Having completed the special technique for evaluating Ms. Cameron's depression, the

ALJ proceeded to determine Ms. Cameron's residual functional capacity ("RFC"). He found,

through the date last insured of December 31, 2006, Ms. Cameron had the RFC to perform

sedentary work as defined in 20 C.F.R. § 404.1567(a)[8] that was limited to simple and unskilled

work. *Id.* At step four the ALJ determined, through Ms. Cameron's date last insured (December

31, 2006), Ms. Cameron was unable to perform her past relevant work as a dental

---

[8] *"Sedentary work.* Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a) (2008).

assistant/receptionist and medical receptionist. "These jobs as listed in the DOT[9] are not considered simple, unskilled work." R. at 19.

Finally, at step five, the ALJ considered Ms. Cameron's age (42 years old on the date last insured, defined as a younger individual between the ages of 18-44), education (high school and able to communicate in English), past work experience (transferability of job skills is not material to determination) and her RFC (sedentary work; limited to simple and unskilled work). The ALJ found the Social Security Administration met its burden of proving Ms. Cameron was capable of performing other work that existed in significant numbers in the national economy through December 31, 2006, the date last insured, using the Medical-Vocational Guidelines and specifically Medical-Vocational Rule 201.28[10], as a framework[11] for the decision. R. at 20 Accordingly, the ALJ concluded Ms. Cameron was not disabled within the meaning of the Act from July 24, 2006, the alleged onset date, through December 31, 2006, the date last insured. *Id.*

---

[9] Dictionary of Occupational Titles

[10] Medical-Vocational Rules 201.00 through 201.29 address the maximum sustained work capability limited to sedentary work as a result of severe medically determinable impairment(s). As reflected in Table No. 1, Rule 201.28 (concerning a younger individual age 18-44, who is a high school graduate or higher, where skilled or semi-skilled previous work experience is not transferable) would direct a decision of not disabled.

[11] "Since the [Medical-Vocational] rules are predicated on an individual[] having an impairment which manifests itself by limitations in meeting the strength requirements of jobs, they may not be fully applicable where the nature of an individual's impairment does not result in such limitations, e.g., certain mental, sensory, or skin impairments." 20 C.F.R. Pt. 404, Subpt. P, App 2, §200.00(e) (2008).

"[W]here an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capacity is further diminished in terms of any types of jobs that would be contraindicated by the non[]exertional limitations. Also, in these combinations of nonexertional and exertional limitations which cannot be wholly determined under the rules in this appendix 2, full consideration must be given to all of the relevant facts in the case in accordance with the definitions and discussions of each factor in the appropriate sections of the regulations, which will provide insight into the adjudicative weight to be accorded each factor." 20 C.F.R. Pt. 404, Subpt. P, App 2, §200.00(e)(2) (2008).

3. **Standard of Review**.

The role of this court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Pass v. Chater*, 65 F.3d at 1202; *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance, of the evidence presented, *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted), and it must be sufficient to justify a refusal to direct a verdict if the case were before a jury. *Hays*, 907 F.2d at 1456. This court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence. *Id.*

4. **Discussion.**

Ms. Cameron claims the ALJ's assessment of her RFC is unsupported by substantial evidence because the ALJ (a) failed to address properly her mental impairment, (b) failed to include any limitation regarding her bilateral carpal tunnel syndrome in assessing her RFC, (c) failed to evaluate the opinion of a treating physician and (d) failed to address properly Ms. Cameron's fatigue. ECF No. 10-1 at 14. The court considers these alleged errors.

A. *Social Security Ruling 98-6p*

In asserting various alleged errors by the ALJ in assessing her RFC, Ms. Cameron argues repeatedly that the ALJ failed to comply with Social Security Ruling 96-8p.[12] Particularly, Ms. Cameron claims the ALJ did not provide a function-by-function assessment of her ability to do

---

[12] Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims. 1996 WL 374184 (Jul. 2, 1996).

work-related activity. Moreover, absent from the ALJ's decision is a narrative discussion describing how the evidence supports the RFC assessment.

The court finds no reversible error. The ALJ discusses in detail the evidence supporting his assessment of Ms. Cameron's RFC. *See* R. at 17-19. The ALJ addresses and resolves inconsistencies in the evidence. While the ALJ did not provide a function-by-function analysis, the court finds the ALJ complied with Social Securing Ruling 96-8p by providing a narrative discussion describing the evidence supporting his RFC determination.

       B.     *Alleged Failure to Address Properly Ms. Cameron's Mental Impairment*

Ms. Cameron argues the ALJ failed to perform a more detailed assessment of her mental RFC. The ALJ "failed to consider the expanded list of work-related capacities that may be affected by mental disorders, and instead cumulated the Plaintiff's mental impairment[] into a less-detailed conclusion that the Plaintiff was limited to simple unskilled work." ECF No. 10-1 at 14.

The court find a more detailed assessment was not warranted for the reasons articulated by the ALJ.

> During the crucial period, claimant's symptoms of depression were treated with medication by Dr. Getzoff, and there is no evidence that she received treatment with a mental health profession[al] until April 2007 (Exhibit 17F). Dr. Getzoff's office records show that both her depressive and MS-related symptoms responded favorably to medication (Exhibit 9F).

R. at 19. The crucial period was between July 24, 2006 and December 31, 2006. The ALJ complied with the Regulations in assessing Ms. Cameron's mental RFC. "We will assess your residual functional capacity based on all the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3) (2008). Ms. Cameron's argument is without merit.

*C.      Alleged Failure to Include Limitation due to Carpal Tunnel Syndrome*

Ms. Cameron notes, at step two, the ALJ found as a severe impairment her carpal tunnel syndrome or CTS. However despite this finding, the ALJ failed to incorporate this severe impairment as part of her physical RFC. It is undisputed that the RFC does not include any limitations attributable to this severe impairment.

In determining Ms. Cameron's RFC, the ALJ noted, "[a]lthough claimant was treated for CTS, the only electrodiagnostic study in the file done on June 27, 2006, only demonstrated mild left carpal and cubital tunnel syndrome (Exhibit 9F). It is also noted that once she wore the correct wrist splint her symptoms were entirely resolved (Exhibit 9F)." R. at 19.

In assessing a claimant's RFC, an ALJ must consider all of the relevant medical and other evidence. 20 C.F.R. § 404.1545(a)(3). An ALJ must then assess the limiting effects of all impairments whether severe or not. *Id.* § 404.1545(e). The relevant medical evidence during the period of July 24, 2006 through December 31, 2006 revealed, once Ms. Cameron began wearing the correct wrist splint, the symptoms from her carpal tunnel syndrome were entirely resolved. By definition, if an impairment has been resolved, then there are *no limiting effects*. If there are no limiting effects, there is no reason for an ALJ to refer to the impairment when assessing a claimant's RFC, *i.e.,* the most a claimant can still do *despite her limitations*. Ms. Cameron's argument is without merit.

*D.      Alleged Failure to Evaluate Treating Physician's Opinion*

Ms. Cameron contends the ALJ failed to consider Dr. Getzoff's opinion that Ms. Cameron suffered from disabling fatigue. Further, since Dr. Getzoff is a treating physician, the error by the ALJ is compounded by the failure to accord controlling weight to Dr. Getzoff's opinion. These errors, according to Ms. Cameron, mandate a reversal.

On July 24, 2006, under Impression, Dr. Getzoff noted "Severe MS fatigue. Even on a full dose of Amantadine and a moderate dose of Ritalin she is still notably fatigued. This causes a significant difficulty for her to get things done during the day." R. at 258. On September 11, 2006, under Impression, Dr. Getzoff wrote, "MS-related fatigue with a good response to Ritalin." R. at 256. On December 29, 2006, Dr. Getzoff, under Impression, wrote "Fatigue which is probably multifactorial." R. at 254. Finally, on February 5, 2007, Dr. Getzoff, under Impression, wrote "Multiple sclerosis in a patient who has little in the way of pure neurologic symptoms but has quite disabling fatigue." R. at 252.

The court finds no reversible error by the ALJ. Dr. Getzoff's opinion that Ms. Cameron suffered from *disabling* fatigue was made on February 5, 2007, after Ms. Cameron's date last insured of December 31, 2006. Additionally, whether Ms. Cameron's fatigue was *disabling* is a matter reserved to the Commissioner.

> Under 20 C.F.R. 404.1527(e) . . . some issues are not medical issues regarding the nature and severity of an individual's impairment(s) but are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability. The following are examples of such issues:
>
> 1.      Whether an individual's impairment(s) meets or is equivalent in severity to the requirements of any impairment(s) in the listings;
>
> 2.      What an individual's RFC is;
>
> *                           *                           *
>
> 5.      Whether an individual is "disabled" under the Act.

SSR 96-5p[13], 1996 WL 374183, at *2 (Jul. 2, 1996). Moreover, since Dr. Getzoff opined on a matter reserved to the Commissioner, such an opinion is not entitled to controlling weight.

---

[13] Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner

"[T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance." *Id.*

### E.    Alleged Failure to Address Properly Ms. Cameron's Fatigue

Finally, Ms. Cameron asserts the ALJ failed to address properly her fatigue when he determined her RFC. Specifically, the ALJ erred by not including "any limitation related to Plaintiff's fatigue in his residual functional capacity assessment." ECF No. 10-1 at 7.

As noted *supra* an ALJ must consider all relevant medical and other evidence when assessing a claimant's RFC. 20 C.F.R. § 404.1545(a)(3). The relevant evidence is not limited to the reports of Dr. Getzoff. In this case the ALJ properly considered other relevant evidence during the crucial period of July 24, 2006 to December 31, 2006, namely, the Function Report of August 31, 2006.

> [T]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. The record shows that despite her fatigue, claimant has remained relatively active in terms of daily activities. Even prior to December 31, 2006, she participated about 10 times a week in her daughter's car pool. Although she testified that she no longer makes scrapbooks and only uses the computer once a week, this was not her usual routine during the crucial period at issue from July 24, 2006[] and December 31, 2006. Pursuant to the Function Report of August 2006, she was able to perform many household chores at her own pace, drove, shopped, did volunteer work for St. Andrew's Society once a month, was independent in self-care, and watched television (Exhibit 4E).

R. at 18-19.

The ALJ's decision to exclude the limiting effects of fatigue as part of Ms. Cameron's RFC is well-supported by the evidence.

5. **Conclusion**.

Substantial evidence supports the decision that Ms. Cameron was not disabled within the meaning of the Act from July 24, 2006, the alleged onset date, through December 31, 2006, the date last insured. Accordingly, the Defendant's Motion for Summary Judgment will be granted and Plaintiff's Motion for Summary Judgment (or Alternative Motion for Remand) will be denied.

Date: February 28, 2014 _____/s/_____
WILLIAM CONNELLY
UNITED STATES MAGISTRATE JUDGE